UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ERICK CHESME BAZURTO, | ) |
|             Petitioner, | ) ) ) |
|             v. | ) )  No. 1:26-cv-00122-SEB-CSW |
| SAMUEL OLSON, KRISTI NOEM, PAMELA BONDI, BRISON SWEARINGEN, | ) ) ) ) ) ) |
|             Respondents. | ) |

## ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS

Erick Chesme Bazurto seeks a writ of habeas corpus requiring that he be released from U.S. Immigration and Customs Enforcement ("ICE") detention or, alternatively, that he receive a bond hearing within seven days. Dkt. 1 at 8. Because the undisputed facts demonstrate that Mr. Chesme Bazurto is eligible for bond, the Court **grants** his petition by directing that he be afforded a bond hearing within **seven days** or released from detention.

**I.     Background**

The material facts are undisputed.

Mr. Chesme Bazurto is a citizen of Ecuador. *Id.*, ¶ 22. He entered the United States without admission or parole on or around August 21, 2023. Dkt. 7-1 at 1 (Notice to Appear). Border Patrol agents arrested Mr. Chesme Bazurto on August 22, 2023, determined that he was in the country illegally, and transported him to the El Paso Hardened Facility for further processing. *Id.* at 8 (ERO Narrative). At some point he appears to have been released. On July 10, 2025, he was served with a Notice to Appear for removal proceedings pursuant to 8 U.S.C. § 1229a in New Jersey. *Id.* at 1.

1

The Notice charged Mr. Chesme Bazurto as "subject to removal" per §§ 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(l) of the Immigration and Nationality Act ("INA") because "[he] [was] not then admitted or paroled after inspection by an immigration officer, or at that time you arrived at a time or place other than as designated by the Attorney General." *Id.* He was then scheduled for an immigration court hearing in New Jersey for September 8, 2027. *Id.*

On December 26, 2025, Mr. Chesme Bazurto was arrested by state or local police in Indiana for driving without a license. *Id.* He was transported to the Dearborn County Jail. *Id.* On December 30, he was transferred to ICE's custody and served with a Warrant for Arrest of Alien (Form I-200), which authorized the federal agent to take Mr. Chesme Bazurto into custody under 8 U.S.C. § 1226 and 8 U.S.C. § 1357. Dkt. 7-1 at 4. At some point, Mr. Chesme Bazurto was transferred to Clay County Jail in Brazil, Indiana, where he remains detained.

Mr. Chesme Bazurto requested a custody redetermination hearing on January 7, 2026. He withdrew this request, however, due to its futility. Dkt. 1 ¶ 22. This is because Bureau of Immigration Affairs ("BIA") precedent holds that he is an "applicant for admission" detained under 8 U.S.C. § 1225(b)(2)(A), whose regulations do not provide for bond hearings.

II.     **Analysis**

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Mr. Chesme Bazurto argues that he is detained without any possibility of bond and that he is therefore in custody in violation of the INA. He also argues that his detention without opportunity for bond violates the Central District of California's order in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, --- F. Supp. 3d ----, 2025 WL 3289861, at *11 (C.D. Cal. Nov. 20, 2025) because he is a member of the nationwide class certified on November 25. *See Maldonado Bautista*

2

*v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, --- F. Supp. 3d ----, 2025 WL 3288403, at *9 (C.D. Cal. Nov. 25, 2025).

The respondents answer that Mr. Chesme Bazurto's petition is premature, that his detention is governed by 8 U.S.C. § 1225(b)(2)(A), and that even if his detention were governed by § 1226(a), § 1226(e) removes this Court's jurisdiction to review the petition. Respondents also argue that the *Bautista* judgment does not have a preclusive effect outside of its jurisdiction in a habeas proceeding.

For the reasons explained below, the Court grants the petition to the extent that Mr. Chesme Bazurto is being held without opportunity for a bond hearing in violation of the INA. The Court declines to reach the class action arguments.[1]

### A. Administrative Exhaustion

Respondents argue that Mr. Chesme Bazurto's petition is premature because he withdrew his request for a bond hearing. Dkt. 7 at 6. Mr. Chesme Bazurto argues that it is futile to attempt

---

[1] The Court need not reach all the parties' arguments concerning the legality or wisdom of enforcing *Maldonado Bautista's* declaratory judgment in this case. The Respondents prudently cite *Trump v. J.G.G.*, in which the Supreme Court recently reiterated that (a) any claim implying the invalidity of the claimant's custody "must be brought in habeas corpus," and (b) habeas jurisdiction lies only with the district where the claimant is confined. 604 U.S. 670, 671–72 (Apr. 7, 2025) (applying *Nance v. Ward*, 597 U.S. 159, 167 (2022); *Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)). On that basis, the Supreme Court vacated a preliminary injunction barring the removal of a provisionally certified class of aliens and held that class members must pursue any relief in habeas actions in the districts where they were confined. *Id.* at 673–74. The precise question Mr. Chezme Bazurto raises is not the same as in *J.G.G.* He seeks relief through the proper vehicle (a habeas petition) and in the proper venue (the district where he is confined), but he seeks relief based on a judgment issued from a different district. If *J.G.G.* does not squarely forbid this Court to grant him relief based on *Maldonado Bautista's* declaratory judgment, it certainly presents cause for caution.

Ultimately, though, *Maldonado Bautista's* enforceability and its interaction with *J.G.G.* are issues this Court need not resolve today. This Court and others have consistently reached the same conclusion as the Central District of California. Even without *Maldonado Bautista*, this Court finds for the reasons explained below that Mr. Chesme Bazurto's detention may be authorized only by § 1226(a), that he is therefore eligible for discretionary release on bond, and that the government's refusal to consider release on bond entitles him to habeas relief.

to exhaust his administrative remedies by moving for a bond hearing because the BIA has already directly addressed the issue of his statutory qualification for bond in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). Dkt. 8 at 2–3.

Respondents do not cite a statute requiring Mr. Chesme Bazurto to request a bond hearing before seeking habeas relief. In the absence of a statutory mandate, the Seventh Circuit holds that "sound judicial discretion governs" whether courts should require exhaustion. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). In similar circumstances, this Court as well as other district courts determined that the petitioner was not required to exhaust administrative remedies by seeking a bond hearing before an immigration judge because doing so would be futile given *Matter of Yajure Hurtado's* holding, which is binding on immigration judges. *Valencia v. Noem*, No. 25-CV-12829, 2025 WL 3042520, at *2 (N.D. Ill. Oct. 31, 2025) ("Requiring Petitioner to exhaust his administrative remedies would be futile because Respondents' position is that he is statutorily precluded from obtaining the relief he seeks. The Court declines to require exhaustion because [t]here is nothing to indicate the BIA would change its position [once] the BIA has predetermined the statutory issue.") (internal quotes and citations omitted); *see also Ceballos Ortiz v. Olson, et al.*, 2:25-cv-00548-MPB-MJD, dkt. 18 at 2-3, 6-9 (S.D. Ind. Nov. 19, 2025) (finding exhaustion would be futile, proceeding to merits, and ordering that petitioner be provided a bond hearing); *Gomez-Gomez v. Swearingen*, No. 2:25-CV-00606-JRS-MJD, 2025 WL 3769065, at *2 (S.D. Ind. Dec. 31, 2025) (same). The Court finds the reasoning applied in these cases persuasive and concludes that Mr. Chesme Bazurto was not required to exhaust administrative remedies because doing so would be futile.

### B. Detention Under § 1226

Mr. Chesme Bazurto argues that circumstances preceding his re-arrest and detention dictate that his detention may only be authorized by 8 U.S.C. § 1226(a):

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. [T]he Attorney General—
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—
>     (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>     (B) conditional parole[.]

The respondents answer that Mr. Chesme Bazurto's detention is authorized by 8 U.S.C. § 1225(b)(2)(A), which directs that "an alien who is an applicant for admission . . . shall be detained" for the pendency of removal proceedings. They insist that, because Mr. Chesme Bazurto has not been admitted to the United States by immigration officials, he is an "alien who is an applicant for admission" and therefore subject to compulsory detention under § 1225(b)(2)(A). Dkt. 7 at 9 ("Petitioner falls into this category: he is an applicant for admission, but he is not covered under (b)(1) because he is not 'arriving' in the United States—he has been here for several years and appears to be expressing a desire to remain in the United States indefinitely by filing an application for asylum.").[2] This position is untenable for two reasons.

First, the respondents' interpretation of § 1225(b)(2)(A)—that every unadmitted alien arrested inside the United States, no matter how long after arriving, is an applicant for admission subject to mandatory detention—is legally dubious. The Seventh Circuit recently responded to this argument with skepticism. *See Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1060–61 (7th Cir. Dec. 11, 2025) ("The question is whether § 1225(b)(2)(A) covers any noncitizen who is unlawfully already in the United States as well as those who present themselves at its

---

[2] The record before the Court does not show that Mr. Chesme Bazurto has applied for asylum.

borders. . . . Based upon the text and structure of the two provisions, we believe that Plaintiffs have the better argument on the current record.").[3] Before and since, this Court and the vast majority of other district courts around the country have rejected the government's interpretation. *See, e.g.*, *Perez Reyes v. Bondi*, No. 4:25-cv-00239-SEB-KMB, 2025 WL 3755928, at *3 (S.D. Ind. Dec. 29, 2025) ("The Court has previously determined that, considering § 1225 as a whole, the most natural meaning is that it applies to 'arriving' noncitizens attempting to enter the United States rather than undocumented aliens like Ms. Perez Reyes who have lived in the interior of the United States for years."). "As this Court previously explained, Respondents' interpretation of the statute (1) disregards the plain meaning of § 1225(b)(2)(A); (2) disregards the relationship between §§ 1225 and 1226; (3) would render a recent amendment to § 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Id.* (citing *Alejandro v. Olson*, No. 1:25-cv-02027-JPH-MKK, 2025 WL 2896348, at *14–19 (S.D. Ind. Oct. 11, 2025)).

The respondents cite contrary district court decisions but concede that this Court's previous analysis "control[s] the result in this case should the Court adhere to the legal reasoning in those prior decisions." Dkt. 7 at 1. The respondents offer no binding authority in the other direction, and the Court declines to depart from its previous reasoning.[4]

---

[3] The Court cites *Castañon-Nava* as persuasive precedent. *See Morales Perez v. Walsh*, 2026 WL 44777, at *2 (N.D. Ill. Jan. 7, 2026) ("[a]t a minimum, *Castañon-Nava* carries substantial persuasive weight. It is true that *Castañon-Nava* cautioned that its decision was limited to 'the current record.' — F.4th —, 2025 WL 3552514, at *8. But the statutory-interpretation issue that the opinion resolved was one purely of *law*, and any adjustment to the *factual* record going forward would not likely alter the legal conclusion. In any event, as explained below, the Court agrees with *Castañon-Nava*'s holding on the legal question, so there is no need here to definitively decide whether it is binding precedent or something short of that.").

[4] Respondents offer a passing reference to *Cruz Rodriguez v. Olson*, No. 1:25-cv-12961, 2025 WL 3672856 (N.D. Ill. Dec. 17, 2025), withdrawn & superseded, 2026 WL 63613 (N.D. Ill. Jan. 8, 2026) as well as *Rojas v. Olson*, No. 25-cv-1437-bhl, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025), which are both from within the Seventh Circuit. Both decisions offer thorough and thoughtful analyses of §§ 1225 and 1226. *Cruz Rodriguez* concludes that *both* provisions apply to certain unadmitted aliens apprehended inside the United States. *See* 2025 WL 3672856, at *7 ("Sections 1225(b)(2) and 1226 have different, but overlapping, scopes."). *Rojas* generally concludes that the fact that all unadmitted aliens fit into the definition of

Second, even if the respondents' legal reasoning was more persuasive, it could not be reconciled with the government's treatment of Mr. Chesme Bazurto in this case. Except for withholding any consideration of bond, the respondents' treatment of Mr. Chesme Bazurto has been entirely consistent with their description of § 1226.

In 2023, federal agents arrested Mr. Chesme Bazurto around the U.S.-Mexico border in El Paso. At some point he was released because he ended up being served with a Notice to Appear on July 10, 2025, to appear for an immigration court hearing in New Jersey. As seen above, § 1225 as a whole does not provide for release except under circumstances not applicable here (e.g., humanitarian parole) because it mandates detention. In 2023 then, the government determined that Mr. Chesme Bazurto was subject to arrest under § 1226(a), not § 1225(b)(2)(A). In December of 2025, federal agents re-arrested Mr. Chesme Bazurto after he was arrested by state or local police for driving without a license. In doing so, they served Mr. Chesme Bazurto with the Form I-200 warrant, which explicitly evokes the authority of § 1226. *See* dkt. 10-1. As seen above, § 1226(a), not § 1225(b)(2)(A), contemplates arrest with a warrant. Thus, the government's own treatment of Mr. Chesme Bazurto suggests that his detention is governed by § 1226(a).

As courts within this district have previously reasoned, mandatory detention and discretionary release are mutually exclusive concepts. An alien cannot be subject both to

---

"applicant for admission" in § 1225(a)(1) makes it so that the most natural reading of the statute includes all applicants for admission, no matter where or when they are arrested. *See* 2025 WL 3033967, at * 7–8. This Court finds the logic underlying both decisions problematic for reasons expressed in previous decisions and discussed further below. Furthermore, the fact that Mr. Chesme Bazurto was arrested with an administrative warrant differentiates the facts before the Court from the facts in *Cruz Rodriguez*. *See also Sandoval v. Acuna*, 2025 WL 3048926, at *5 (W.D. La. Oct. 31, 2025) ("Petitioner does not allege that the Attorney General issued a warrant for her arrest and detention, further indicating that Petitioner is properly detained under § 1225(b) as an 'applicant for admission,' not § 1226(a)"); *Vargas Lopez v. Trump*, 2025 WL 2780351, at *7 (D. Neb. Sept. 30, 2025) ("This failure of proof of a warrant for Vargas Lopez's arrest is fatal to the Second Cause of action. Vargas Lopez has not provided this Court with the documents necessary for Vargas Lopez to be eligible for release on bond under § 1226.").

mandatory detention under § 1225(b)(2)(A) and eligible for discretionary release under § 1226(a)(2); the provisions can only exist harmoniously if they apply to separate classes of aliens. *See Singh v. Bondi*, No. 1:25-cv-02101-SEB-TAB, 2025 WL 3029524, at *6 (S.D. Ind. Oct. 30, 2025). Furthermore, the fact that these two classes of noncitizens would be treated differently makes sense within broader immigration law. As the Seventh Circuit explained, "the difference in treatment between a noncitizen at the border and one already in the United States fits within the broader context of our immigration law. Indeed, '[t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law.'" *Castañon-Nava*, 161 F.th at 1061 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)); *see also Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are within the United States after an entry, irrespective of its legality.").

The Court concludes that Mr. Chesme Bazurto's detention is governed by § 1226(a), and it declines to reach his other arguments.[5]

### C. Jurisdiction Under § 1226(e)

The respondents also argue that, even if Mr. Chesme Bazurto's detention is governed by § 1226, then § 1226(e) deprives the Court of jurisdiction over his claim because "he will have the opportunity to receive a hearing before an Immigration Judge." Dkt. 7 at 13. This argument collapses under its own weight. Section 1226(e) precludes review of the "Attorney General's discretionary judgment regarding the application of" § 1226 to detain an alien or revoke or deny

---

[5] The Court incorporates by reference its more fulsome statutory interpretation of 8 U.S.C. §§ 1226 and 1225 and corresponding analysis of the circumstances to which those statutes apply as set forth in *Singh v. Bondi*, No. 1:25-cv-02101-SEB-TAB, 2025 WL 3029524, at *6 (S.D. Ind. Oct. 30, 2025) and *Perez Reyes v. Bondi*, No. 4:25-cv-00239-SEB-KMB, 2025 WL 3755928, at *3 (S.D. Ind. Dec. 29, 2025).

bond or parole. Under the authority of the Attorney General, an immigration judge has not rendered a discretionary judgment under § 1226. An immigration judge has not considered the possibility of bond or parole and therefore has not revoked or denied it.

Section 1226(e) might preclude this Court's intervention if Mr. Chesme Bazurto requested bond, an immigration judge considered his request on the merits and denied it, and he petitioned this Court for a different result. But there is no record that an immigration judge has made this kind of determination. The government has not made a discretionary decision to deny or revoke bond and thus, § 1226(e) does not apply to this case.

### D. Relief Available

Mr. Chesme Bazurto argues that his detention without consideration of bond violates the laws of the United States and asks the Court to order his immediate release. Any relief afforded through habeas corpus must be "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984). Whether viewed through the scope of § 1226 or the Fifth Amendment, the appropriate relief for Mr. Chesme Bazurto is a bond hearing—not immediate release. He maintains—and the Court agrees—that he is subject to § 1226, which allows the government to "continue to detain" him. 8 U.S.C. § 1226(a)(1). Mr. Chesme Bazurto's custody is not unlawful because of the very fact that he is detained. Rather, his custody is unlawful only to the extent the government refuses to consider whether he may be released as the law requires.

### III. Conclusion

The petition for a writ of habeas corpus is **granted** insofar as the respondents will have **seven days** to certify that Mr. Chesme Bazurto has (1) appeared for a bond hearing before an immigration judge consistent with 8 U.S.C. § 1226(a) and pertinent regulations, or (2) been

released from detention. The petition is **denied** to the extent it seeks an order that Mr. Chesme Bazurto be immediately released. The **clerk is directed** to enter **final judgment**.

**IT IS SO ORDERED.**

Date: _____2/3/2026_____

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Rachel Dever
Church Church Hittle and Antrim
rdever@cchalaw.com

Michael Ortiz Cruz
OC Law LLC
michael.ortiz.cruz@gmail.com

Liberty L. Roberts
CHURCH CHURCH HITTLE & ANTRIM (Noblesville)
lroberts@cchalaw.com

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov